142

**C. K. WEBB et al.**

v.

**James A. DONALDSON.**

Misc. No. 3059.

United States District Court
W. D. Pennsylvania.

Nov. 28, 1962.

---

Robert B. Ivory, Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiffs.

James P. McArdle, McArdle, Harrington & McLaughlin, Pittsburgh, Pa., for defendants.

ROSENBERG, District Judge.

After notice by the plaintiffs to the defendant, plaintiffs presented to the Court a pleading entitled Application for Relief and Motion for Injunction. The defendant appeared and was represented by counsel. Counsel respectively argued their cases and submitted to the Court the constitution of the Brotherhood of Railroad Trainmen, which counsel agreed was the internal governing law as it related to the Brotherhood of Railroad Trainmen and the subordinate lodges. Counsel also, respectively, thereafter presented supporting memoranda. Plaintiffs also presented an amendment to their originally presented pleading.

Plaintiffs are the officials variously of three subordinate lodges of the Brother-

hood of Railroad Trainmen, being numbered 553, 1092 and 711. The defendant is the General Chairman elected by two lodges and apparently appointed by a third lodge, and heads the General Committee of the three lodges. The plaintiffs aver that the defendant has been defeated for re-election as Local Chairman of Lodge No. 553, and that his term as Local Chairman expires on December 31, 1962, as does his term of office as General Chairman. He is, however, a candidate for re-election to that office. The election is yet to be held.

Each lodge at different times passed dual motions. The first was one which instructed the defendant not to file any so-called "Section 6 Notice" with the employer Monongahela Connecting Railroad to open negotiations on wages, rule changes or working conditions until after October 31, 1962. The second motion instructed the defendant as to specific proposals for negotiations which he was to include in any "Section 6 Notice" which he should submit to the railroad employer.

The complaint is that the General Chairman has served a "Section 6 Notice" upon the employer, Monongahela Connecting Railroad Company, and has failed to include the subjects of discussion with the employer railroad those proposals for negotiation which he was specifically instructed to do by the second motions; that this allegedly non-conformatory action by the defendant was appealed to the President of the Brotherhood of Railroad Trainmen who decided in favor of the defendant; and that an appeal from the Brotherhood President's decision followed on November 9, 1962 for a review to the Board of Directors of the Brotherhood of Railroad Trainmen. The plaintiffs assert that because the Board of Directors of the Brotherhood of Railroad Trainmen will not hold a meeting on the matter until January, 1963, that the defendant, in the meantime, may pursue his own negotiations in bringing about, what they name, a "sweetheart contract" and that this would be harmful to the lodges and work immediate and irreparable injury. It is for this reason, plaintiffs contend, that a temporary restraining order and preliminary injunction ought to be granted by this Court.

Conflicting arguments are presented on the power of the General Chairman by virtue of the Brotherhood's constitution and what he may do in the meantime and before another succeeding General Chairman is elected (if another is elected to succeed the defendant), and further, if he should enter into a contract, on whether the employer would or could honor the agreement.

Accepting the averments as contained in the application and motion as true, and upon examination of the constitution as it relates to the matter presently before me, certain facts are apparent. It is obvious, and I so find, that the defendant is the duly elected General Chairman; that his term of office will not expire until December 31, 1962; that the General Chairman's action complained of here is within the authority set out by the constitution and by-laws of the Brotherhood; that the General Chairman possesses the power and the responsibility to enter the types of negotiations which are now in controversy; and that the constitution provides for processes within the Brotherhood of any complaint of members or officers of any locals, as that for which the instant action is brought.

Accordingly, I find as a matter of law that the plaintiffs have not exhausted their internal remedies within the Brotherhood. Neither is there any showing that irreparable damage will result if the injunction is not granted. The constitution, particularly Rule 3, and references to other rules to the powers of the General Committee and the General Chairman, provide no power either in the General Committee or the Chairman to reverse or change a general system wage schedule or agreement, first, unless authorized to do so by majority vote of the lodges in the system, or by a majority of votes cast in a referendum vote of the members of the system who are affected, and, second, without the approval of the President of the Brotherhood of Railroad Trainmen.

144

■ This Court is being asked to intercede, actually to interfere, with the internal procedure of the subordinate lodges and the Brotherhood of Railroad Trainmen. It is being asked to prevent one of its proper officials from performing the duties which he is, by their constitution, authorized and empowered to do until December 31, 1962. As for the apprehension, expressed by the plaintiffs that the employer, not being limited or restrained, may negotiate and execute an unsatisfactory contract, I am aware that the employer's attorney was an observer at the presentation of the pleading in open court, and that being on notice, it appears neither likely nor reasonable that it would enter into an agreement which would be neither compliant to the constitution or to the free will (by ratification) of the employees generally. There is no averment that the Board of Directors was asked to speed up the determination because of the existence of an emergency. There is no reason, therefore, why this Court should act as a substitute for the Board of Directors.

Edward Joseph Hickey, Jr., a lawyer who has participated in legislative history in behalf of railroad unions affiliated with the Railway Labor Executives' Association, in an article entitled THE BILL OF RIGHTS OF UNION MEMBERS published in The Georgetown Law Journal, Volume 48, Number 2, 1959, aptly expressed my thinking in the following words at Pages 243 and 244:

> "As stated previously, there is no more highly prized or traditionally enjoyed right than that of the members themselves, expressed in their union constitutions, to pass upon the grievances of their brother members. Trade unions have enjoyed such a procedure for many years, and it is by the voluntary action of the union members in adopting their own governing laws that this choice of procedure has been expressed."

■ The Labor-Management Reporting and Disclosure Act of 1959, 29 U.S. C.A. § 411(a) (4) in providing for the right of any member of a labor organization to institute an action in any court contains the proviso " * * * [t]hat any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * * *." Chief Judge Lumbard of the Second Circuit United States Court of Appeals in Detroy v. American Guild of Variety Artists et al., 2 Cir., 286 F.2d 75, at page 78 (1961), construed this statute "to mean that a member of a labor union who attempts to institute proceedings before a court or an administrative agency may be required *by that court or agency* to exhaust internal remedies of less than four months' duration before invoking outside assistance." The requirement that internal remedies be first exhausted would not be a denial of due process. Smith v. General Truck Drivers, Warehousemen and Helpers Union Local 467, D.C., 181 F.Supp. 14 (1960); Ragland v. United Mine Workers of America, D.C., 188 F.Supp. 131 (1960).

■ The Brotherhood's constitution provides for a method of appeals and eventual determination finally by the Board of Directors or the Board of Appeals. By becoming a member of a union, one in effect makes a contract by which he is governed by the constitution and rules of that organization. Smith v. General Truck Drivers, Warehousemen and Helpers Union Local 467, supra.

Assuming all of the facts as averred in the application and motion are true, it seems abundantly clear that among the most treasured rights of trade unions is the right to be permitted to resolve their own internal problems before a court accepts jurisdiction of such matters. The available internal procedure has not been followed here to exhaustion. The right should be sustained in a union and its membership to permit this to be done without obstruction by injunction. Accordingly, the Application for Relief and Motion for Injunction is hereby refused.