736 F.2d 618
 116 L.R.R.M. (BNA) 2786, 101 Lab.Cas. P 11,068
 Raymond J. DONOVAN, Secretary of Labor, Plaintiff-Appellant,
Cross-Appellee,
v.
NATIONAL TRANSIENT DIVISION, INTERNATIONAL BROTHERHOOD OF
BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS,
FORGERS AND HELPERS, et al.,
Defendants-Appellees, Cross-Appellants.
 Nos. 82-2104, 82-2121.
 United States Court of Appeals,
Tenth Circuit.
 June 15, 1984.
Rehearing Denied July 13, 1984.
 
 Steven J. Mandel, Atty., Washington, D.C. (T. Timothy Ryan, Jr., Sol. of Labor, Karen I. Ward, Associate Sol., Kerry L. Adams, Washington, D.C., Counsel for Appellate Litigation, and Tedrick A. Housh, Jr., Regional Sol., Kansas City, Mo., with him on the brief), U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant, cross-appellee.
 Steve A.J. Bukaty of Blake & Uhlig, Kansas City, Kan., for defendants-appellees, cross-appellants.
 Before McWILLIAMS, LOGAN, and SEYMOUR, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 The Secretary of Labor brings this action to compel defendant International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, CLC (International) and defendant National Transient Division (NTD) to comply with the requirements of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. Secs. 401-531 (LMRDA). NTD, one of five divisions of the International, operates in forty-one states and consists of approximately 8,000 craftsmen who travel throughout the United States erecting steel tanks and related structures. Unlike the other four divisions of the International, NTD has no separate local organizations. Rather, NTD was established by the International Constitution "for the purpose of giving status to and servicing those members who by the transient nature of their employment and their coverage under the NTD Agreement have no fixed permanent place of employment and who thus are unable to carry membership in a Local Lodge or participate in its activities." Pl.Ex. 4. A national director and eight district representatives administer NTD. These officials are appointed by the International president and serve at his pleasure. NTD has never conducted an election of officers, has never adopted and filed with the Secretary a constitution and bylaws, and has never filed any financial reports with the Secretary.
 
 
 2
 After several NTD members filed a complaint with the Secretary protesting the failure of NTD to conduct an election of officers, the Secretary brought this action. He contends that NTD is a "local labor organization" within the meaning of 29 U.S.C. Secs. 402(i), 402(j), and 481(b) and thus has violated 29 U.S.C. Sec. 481(b) by failing to hold an election of officers every three years by secret ballot and 29 U.S.C. Secs. 431(a), 431(b), and 437(b) by failing to adopt and file a constitution and bylaws and by failing to file reports with the Secretary. The Secretary alleges that the International violated 29 U.S.C. Sec. 481(e) by failing to ensure that NTD members had the opportunity to nominate and vote for candidates.
 
 
 3
 After trial, the district court, 542 F.Supp. 957, held that NTD is a labor organization within the meaning of 29 U.S.C. Sec. 402(i) and 402(j) and therefore must comply with the reporting and disclosure requirements of the LMRDA. The court concluded, however, that NTD is a "national" rather than a "local" labor organization. Hence, according to the trial court's ruling, NTD must conduct elections of officers at the five-year intervals prescribed by 29 U.S.C. Sec. 481(a) rather than at the three-year intervals prescribed by 29 U.S.C. Sec. 481(b). Defendants appeal, contending that the district court lacked subject matter jurisdiction under 29 U.S.C. Sec. 482(b) and that NTD is not a labor organization for the purposes of the LMRDA. The Secretary cross-appeals, contending that NTD is a local rather than national labor organization for the purposes of 29 U.S.C. Sec. 481.
 
 
 4
 * We first address defendants' contention that the district court lacked subject matter jurisdiction under 29 U.S.C. Sec. 482(b). Under 29 U.S.C. Sec. 481, international, national, and local labor organizations must hold periodic elections of officers by secret ballot. Section 482(a) permits a member of a labor organization to file a complaint with the Secretary alleging a violation of Sec. 481. Section 482(b) provides:
 
 
 5
 "The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization."
 
 
 6
 Defendants contend that Sec. 482 authorizes the Secretary to bring suit only to set aside an invalid election. They emphasize that Sec. 482(a) states, "The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide." (emphasis added). Defendants also note that Sec. 482(b) empowers the Secretary to bring an action to "set aside the invalid election." Thus, defendants assert, the text of the statute indicates that the Secretary may not bring an action against NTD under Sec. 482 because NTD has never conducted an election of officers.
 
 
 7
 Defendants' argument is unpersuasive. Section 482(a) permits a labor organization member to file a complaint "alleging the violation of any provision of section 481." (emphasis added). After investigating the complaint, the Secretary may bring a civil action "to set aside the invalid election, if any." 29 U.S.C. Sec. 482(b) (emphasis added). Section 482(c) states that when "an election has not been held within the time prescribed by section 481 ... the court shall declare the election, if any, to be void and direct the conduct of a new election." (emphasis added). Thus, the text of the statute clearly indicates that Congress contemplated an action pursuant to Sec. 482 when a labor organization fails to conduct an election. Moreover, this construction fully comports with the basic objective of the statute: to guarantee democratic union elections "modeled on 'political elections in this country.' " Local 3489, United Steelworkers v. Usery, 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977) (quoting Wirtz v. Hotel, Motel & Club Employees Union, Local 6, 391 U.S. 492, 504, 88 S.Ct. 1743, 1750, 20 L.Ed.2d 763 (1968)).
 
 
 8
 Defendants also rely on a number of cases in contending that the Secretary may not proceed under Sec. 482 unless the labor organization has conducted an election. Driscoll v. International Union of Operating Engineers, Local 139, 484 F.2d 682 (7th Cir.1973), cert. denied, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974), is illustrative. In Driscoll, a union member brought suit before an election challenging the union's practice of requiring every candidate for union office to execute an affidavit stating that he was not a Communist. The court upheld the district court's dismissal of the complaint, in part because Sec. 402 remedies are unavailable until after the union holds the scheduled election. Id. at 688.
 
 
 9
 Driscoll and similar cases are readily distinguishable from the case at bar. Congress limited relief under Sec. 402 to post-election relief when an election is scheduled in order to prevent individuals or the government from blocking or delaying the election. See Dunlop v. Bachowski, 421 U.S. 560, 568-70, 95 S.Ct. 1851, 1858-59, 44 L.Ed.2d 377 (1975); Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964). That policy is not implicated when, as here, the union does not intend to conduct elections. Although courts have not squarely addressed the issue before us, they have upheld actions under Sec. 482 when a union failed to hold an election within the time limits that Sec. 481 prescribes. See Marshall v. Local Union 1374, International Association of Machinists, 558 F.2d 1354, 1358 (9th Cir.1977); Hodgson v. Union de Empleados de los Supermercados Pueblo, 388 F.Supp. 1026 (D.P.R.1974). We therefore hold that Sec. 482 authorizes the Secretary to bring suit against a labor organization that fails to hold periodic elections prescribed by Sec. 481.
 
 II
 
 10
 We next address defendants' assertion that NTD is not a "labor organization" within the meaning of 29 U.S.C. Sec. 402(i). We note at the outset that Congress gave exclusive enforcement authority under Title IV of the Act to the Secretary of Labor in order "to utilize the special knowledge and discretion of the Secretary." Calhoon v. Harvey, 379 U.S. at 140, 85 S.Ct. at 296. Thus, we must defer to the Secretary's interpretation of the statute "unless there are compelling indications that it is wrong." E.I. Du Pont de Nemours & Co. v. Collins, 432 U.S. 46, 55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977); see Cross v. United Mine Workers, 353 F.Supp. 504, 508 (S.D.Ill.1973).
 
 Section 402(i) provides in relevant part:
 
 11
 " 'Labor organization' means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment ...."
 
 
 12
 Defendants argue that many NTD members cannot attend NTD meetings regularly or have substantial direct contact with the organization because of the transient nature of their work. Thus, defendants contend, NTD is not a labor organization subject to the LMRDA because its members do not "participate" in the organization; rather, NTD is merely a "division" of the International.
 
 
 13
 In order to effectuate the purposes of the Act, Congress defined labor organization broadly "to provide comprehensive coverage of labor organizations engaged in any degree in the representation of employees or administration of collective bargaining agreements." S.Rep. No. 187, 86th Cong., 1st Sess. 53, reprinted in 1959 U.S.Code Cong. & Ad.News 2318, 2370 (emphasis added); see also 29 C.F.R. Sec. 451.2. Thus, if the organization represents its members regarding grievances, labor disputes, or terms or conditions of employment, the organization is subject to the Act regardless of its formal attributes, see Brennan v. United Mine Workers, 475 F.2d 1293, 1295-96 (D.C.Cir.1973); 29 C.F.R. Sec. 451.3, or the extent of its representative activities. See National Educational Association v. Marshall, 100 L.R.R.M. (BNA) 2565 (D.D.C.1979).
 
 
 14
 The evidence indicates that NTD officials and members negotiate collective bargaining agreements with employers for the benefit of NTD members. Although these agreements are not complete collective bargaining agreements in themselves, they establish standards regarding labor disputes, grievances, hours, and other terms and conditions of employment. Furthermore, NTD district representatives provide a number of services for NTD members, including handling grievances under the agreement and distributing publications. NTD holds meetings in which its members participate and collects dues from its membership. This evidence clearly shows that NTD is an organization in which employees participate and which represents its members concerning grievances, labor disputes, and other terms and conditions of employment. NTD admits that it is involved in an industry affecting commerce. Accordingly, we hold that NTD is a labor organization within the meaning of Sec. 402(i).
 
 III
 
 15
 The Secretary contends that the trial court erred in concluding that NTD is a "national" rather than a "local" labor organization for the purposes of 29 U.S.C. Sec. 481. Noting that the LMRDA does not define "national" or "local," the district court reasoned that those terms refer to the geographical boundaries of the labor organization. Thus, since NTD operates in forty-one states, the district court held that NTD is a national labor organization. Defendants add that NTD is unable to hold monthly meetings that most NTD members can attend or to operate a hiring hall, two functions that many locals perform. The Secretary, on the other hand, relies on 29 C.F.R. Sec. 452.11. That regulation states that an organizational unit's characterization as a local or national body is "determined by its functions and purposes rather than the formal title by which it is known or how it classifies itself." The Secretary contends that NTD is functionally and structurally a local labor organization notwithstanding the geographical breadth of its operations.
 
 
 16
 Since the LMRDA defines neither "local" nor "national," we must construe those terms in light of their ordinary meaning, congressional purpose, and the deference accorded to the Secretary's construction of the Act. The typical union structure is a three-tier hierarchy. T. Kheel, Labor Law Sec. 3.01 (18 Business Organizations 1980). Below the AFL-CIO is the national or international union, which performs such functions as supervising locals, maintaining legal departments, and providing public relations staffs and liaison offices with government departments. See id. at Sec. 3.02. The national or international organization is made up of subordinate locals. Generally, local labor organizations provide day-to-day services to the membership, such as policing collective bargaining agreements, disposing of grievances, collecting membership dues and disciplining dissident members. See id. at Sec. 3.03; Shultz v. Employees' Federation, 74 L.R.R.M. (BNA) 2140, 2143 (S.D.Tex.1970). Although a local usually represents workers located within close geographic proximity, it may simply represent workers in a single bargaining unit. See A. Goldman, Labor Law and Industrial Relations in the United States of America 182-83 (1979).
 
 
 17
 Congress' purpose in requiring that labor organizations conduct elections under the LMRDA was to ensure that union officers would be responsive to the needs and desires of union members. See S.Rep. No. 187, 86th Cong., 1st Sess. 19-20, reprinted in 1959 U.S.Code Cong. & Ad.News 2318, 2336. When it required elections every three years for locals but only every five years for national or international organizations, Congress evidently considered it especially important to ensure the accountability of those officials with whom union members have the most direct contact. Thus, it makes little sense to focus exclusively on the geographical proximity of the organization's membership in determining whether a labor organization is a local within the meaning of Sec. 481. Rather, congressional intent indicates that the focus should be on the relationship between the organization and its members. Accordingly, we agree with the Secretary that we must focus on NTD's functions and structure in order to determine whether it is a local or a national labor organization.
 
 
 18
 Given its structure and functions, we find no reason to reject the Secretary's characterization of NTD as a local labor organization. NTD is subordinate to the International and has no subordinate organizational units. Thus, it has the relatively simple organizational structure characteristic of local labor organizations. See Shultz v. Employees' Federation, 74 L.R.R.M. (BNA) at 2143. It pays a "per capita" tax to the International, which is a tax locals typically pay to their parent national or international organizations. See King v. Randazzo, 234 F.Supp. 388, 394 (E.D.N.Y.1964), aff'd 346 F.2d 307 (2d Cir.1965). Most important, NTD performs the functions of a local. NTD officials negotiate the basic terms of collective bargaining agreements, ensure that those agreements are enforced, handle grievances, collect dues from members, maintain out-of-work lists, hold meetings at which members express their views, and provide a number of other services directly to NTD members. We therefore find that NTD is functionally and structurally a local labor organization.
 
 IV
 
 19
 Finally, defendants contend that NTD should be exempt from the election requirements of 29 U.S.C. Sec. 481 because it is unable to comply with those provisions. Specifically, defendants contend that the transience of NTD members renders NTD unable to comply with Sec. 481(e), which requires the labor organization to mail notice of an election to each member within fifteen days before the election.
 
 
 20
 Defendants' argument is unconvincing. Section 481(b) requires each local to conduct officer elections at least once every three years. If it fails to do so, Sec. 482(c) requires the court to direct an election supervised by the Secretary. The LMRDA contains no exception for instances in which compliance with these requirements is difficult, and we are unwilling to imply one given the clear congressional mandate. Cf. Wirtz v. Local Union No. 1622, 285 F.Supp. 455, 465 (N.D.Cal.1968) (Congress did not give courts the power to determine whether election would serve the public interest). Moreover, defendants have not shown that NTD is unable to comply with the Act's election provisions. Section 481(e) merely requires that the labor organization mail notice of the election to its members at their last known home address; it does not require that the notice actually reach them. NTD presently manages to elect delegates to the International convention and to collect dues from its members. Thus, NTD's inability to hold elections complying with the LMRDA is speculative at best.
 
 
 21
 We affirm the opinion of the district court insofar as it held that it had subject matter jurisdiction over this action and that NTD is a labor organization within the meaning of 29 U.S.C. Sec. 402(i). We reverse that portion of the district court's opinion holding that NTD is a national labor organization subject to 29 U.S.C. Sec. 481(a) because we conclude that NTD is a local labor organization for the purposes of 29 U.S.C. Sec. 481(b).
 
 
 22
 AFFIRMED IN PART and REVERSED IN PART.