Paul MICHELOTTI, Plaintiff–Appellant,

v.

AIR LINE PILOTS ASSOCIATION, Defendant–Appellee.

No. 94–3780.

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1995.

Decided July 26, 1995.

Robin B. Potter, Potter & Schaffner, Chicago, IL, Leon M. Rosenblatt (argued), West Hartford, CT, for Paul Michelotti.

Michael B. Erp, Harold A. Katz, Katz, Friedman, Schur & Eagle, Chicago, IL, Peter Herman (argued), Thomas N. Ciantra,

Cohen, Weiss & Simon, New York City, for Air Line Pilots Ass'n., Intern.

Before POSNER, Chief Judge, and WOOD, Jr. and COFFEY, Circuit Judges.

POSNER, Chief Judge.

A member of the airline pilots' union has sued it, charging a violation of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 *et seq.* The Act forbids a national labor union, such as ALPA, to raise the dues of or levy an assessment on members save "by majority vote of the delegates voting at a regular convention, or at a special convention [upon specified notice]," or by a referendum of the union's membership, or, if there is an express delegation in the union's constitution or bylaws, by majority vote of the members of the executive board, or similar governing body, of the union. 29 U.S.C. § 411(a)(3)(B). The union made an assessment of $1 million against pilots of United Air Lines for legal fees expected to be incurred in an arbitration arising out of the purchase by United of routes and equipment from the former Pan American World Airways. When divided among all of United's pilots the assessment is very small (especially since most of it was returned, because the legal fees for the arbitration were smaller than expected)—and this is not a class action—but apparently Mr. Michelotti believes that there is an important issue of principle at stake.

The assessment was approved not by a referendum of the members of ALPA or by a governing body to which the power of assessment had been expressly delegated, but by a body within ALPA known as the United Master Executive Council, or United MEC. Either United MEC is a "convention" within the meaning of the Act, or the assessment was unlawful. The district judge thought it was the former and granted summary judgment for ALPA.

ALPA is the certified collective bargaining representative for the pilots employed by the major U.S. airlines. Each airline's pilots elect a MEC for that airline. (The MECs are like locals, but do not engage in collective bargaining. *Air Wisconsin Pilots Protection Comm. v. Sanderson,* 909 F.2d 213, 215 (7th Cir.1990).) The members of all the MECs constitute, together with ALPA's national officers, the Board of Directors of ALPA. Each MEC has four regularly scheduled meetings a year, and there are also ad hoc meetings, often by telephone rather than in person, as occasion demands. The Board of Directors meets every two years. The challenged assessment was initially approved at one of these teleconferences and later ratified at a regularly scheduled meeting of the United MEC.

The constitution and bylaws of ALPA do not use the term "convention." A flyer published by the United MEC says that "ALPA holds its convention, called the Board of Directors meeting, biennially," but also that "MEC officers are similarly elected under the convention form of government." The Labor–Management Reporting and Disclosure Act does not define the term "convention," and the dictionary definitions are too vague to be of much help. They define a convention as a formal assembly of delegates of an association for a specified purpose; that would cover the Board of Directors and the MEC equally well or badly.

No one associates the term "board of directors" or "executive council" with the idea of a "convention." The term "convention" puts one in mind of the conventions of political parties, certain trade association meetings, and constitutional conventions. And ALPA's constitution and bylaws, as we noted, do not describe either the Board of Directors or the MECs as conventions. Yet the plaintiff concedes that the biennial meeting of the Board of Directors is a convention. The MECs are smaller, and meet more frequently; and it does seem odd to think of a body that meets more than once a year as a "convention." Conventions typically are annual, or biennial, or quadrennial, or, as in the case of the Constitutional Convention of 1787, extraordinary, affairs. So, if the case is to be decided on the basis of which litigant's position comes closer to the meaning that "convention" bears in ordinary language, the plaintiff must win. And ordinary language might seem our only guide, given the absence of a statutory definition or of any cases that have interpreted the term as it appears in the Act.

Only we do not see how the plaintiff's position serves any purpose plausibly to

be ascribed to the statutory provision in question. The provision is intended to ensure that dues or assessments are not levied by unrepresentative union leaders. In other words, it is intended to bar taxation without representation. See *Patterson v. United Brotherhood of Carpenters & Joiners,* 906 F.2d 510, 514–15 (10th Cir.1990); cf. *Ranes v. Office Employees Int'l Union,* 317 F.2d 915, 918 (7th Cir.1963); *Mori v. International Brotherhood of Boilermakers,* 653 F.2d 1279, 1284–85 (9th Cir.1981); *King v. Randazzo,* 346 F.2d 307, 309 (2d Cir.1965). From this standpoint there is no difference between ALPA's Board of Directors and ALPA's United MEC—indeed any difference cuts in favor of regarding the latter as the more appropriate, the more representative, body to impose the assessment. The assessment was levied only against United's pilots, and their representative body is the United MEC. ALPA's Board of Directors is just the United MEC diluted by pilots of other airlines, who have no pecuniary stake in the assessment. Were the Board to impose the assessment, United's pilots would be at the mercy of officials who do not represent them but instead represent the pilots of other airlines.

It is true that, the larger a representative body, the more representative or deliberative in a broad sense it might be thought to be. And modern conventions typically are large. But increasing the size of a representative body is hardly a recipe for enhanced deliberation; if anything, by increasing the costs of deliberation and reducing the responsibility of each member, an increase in size reduces the quality of deliberation. And we have just seen how in this very case the larger body is less representative of the interests of the individuals affected by the measure in question than the smaller body.

It is also true that, the less frequently a body meets, the more focused and conscientious its members might be assumed to be. But this is a weak point also, since the less frequently a body meets the less continuity and expertise it can be expected to have and the more crowded its agenda is likely to be, squeezing the time it can devote to any particular item. Boards of directors that meet infrequently are not more effective corporate watchdogs than ones that meet frequently.

We cannot in short find any good reason to suppose that the body that is smaller and meets more frequently (the United MEC) is inferior from the standpoint of the policy served by the "convention" provision of the Labor–Management Reporting and Disclosure Act to the body that is larger and meets less frequently (ALPA's Board of Directors). We also think that the paucity of challenges to assessments made by nonstandard "conventions" (this is the first such challenge, as far as we have been able to determine) is a good practical reason for our not throwing a stick into the spokes and forcing ALPA to reorganize—or at least to designate the MECs as "conventions": and if that is all that a victory for the plaintiff would accomplish, it would be Pyrrhic indeed.

AFFIRMED.